NEUMANN v. HUDSON COUNTY CONSUMERS' BREWING CO.

(Supreme Court, Appellate Division, Second Department. February 14, 1913.)

1. MUNICIPAL CORPORATIONS (§ 706*)—ACCIDENT AT STREET CROSSING—CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

Plaintiff could not recover for the death of his intestate, who was run over by defendant's truck while crossing the street, however negligent defendant's servants were, in the absence of evidence which showed, or tended to show, that deceased was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

2. NEGLIGENCE (§ 85*)—CONTRIBUTORY NEGLIGENCE—CHILDREN—EMERGENCY OR FRIGHT.

A child in the exercise of due care in crossing a street, finding herself in a position of danger caused by the negligence of defendant's servants, and becoming suddenly frightened, was not chargeable with the exercise of what, in a moment of calmness, would be ordinary care, or with blame in turning her bicycle and running in front of defendant's oncoming truck, in order to avoid it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 121–128; Dec. Dig. § 85.*]

3. MUNICIPAL CORPORATIONS (§ 706*)—ACCIDENT AT STREET CROSSING—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

In plaintiff's action for the death of his intestate by being run over by defendant's truck, an instruction that if the truck came upon her in a way calculated to produce fright, and such fright caused an error of judgment by which the truck struck her, she was not guilty of contributory negligence, and that the jury should say whether there was such fright, was erroneous, in that it did not require a finding that the fright was not due to her own contributory negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

Hirschberg, J., dissenting.

Appeal from Trial Term, Rockland County.

Action by Frank Neumann, as administrator, etc., of Frieda Neumann, deceased, against the Hudson County Consumers' Brewing Company. From a judgment of the Supreme Court in favor of the plaintiff, and from an order denying its motion for a new trial, defendant appeals. Judgment and order reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Theodore H. Lord, of New York City, for appellant.
John F. McFarlane, of Nyack, for respondent.

CARR, J.   On July 12, 1911, early in the afternoon of a bright, clear day, a young girl, about 12 years of age, was riding a bicycle across the main highway in the village of Sparkill, in Rockland county.   She had been at the post office in the village, and was returning home in an easterly direction across said highway.   She had come out from a lateral highway which crossed the main road.   As she was at or near the center of the main highway, she came into collision with a heavily laden motor truck, and the rear wheel of her bicycle appears to have been struck by the front, right-hand wheel of the motor truck.   Her bicycle was swerved around, and she and it were thrown under the wheels of the on-coming truck.   Injuries resulted to her which caused her death.   The plaintiff, her father, has obtained a judgment against the defendant, the owner of the motor truck, for the sum of $4,000 and taxed costs.   From this judgment, as well as from an order denying a motion for a new trial, the defendant appeals.   The grounds of the appeal are that the verdict was not only against the weight of evidence, but that there was, in fact, no evidence to show negligence on the part of the defendant and freedom from contributory negligence on the part of the plaintiff; and there is likewise urged an exception taken to a part of the charge of the trial court.

A number of witnesses were produced by the plaintiff to show the circumstances preceding and attending the happening of the accident. Of these, but two claim to have seen the happening of the accident itself.   One of them is the witness Robinson, and the other one Corwin.   Evidence was given to show that the motor truck was being driven south on the main highway at a rate of speed estimated by one witness for the plaintiff at from 12 to 15 miles an hour, and that, as it approached the intersecting highway, no horn was sounded to give warning.   The defendant's driver admitted that no horn had been sounded by him, and he gave reason for such fact by stating that, though he was looking ahead, there was no one in front of him on the highway, and hence he gave no warning.   The plaintiff's witness Robinson testified that he was at work at the railway station platform, which he estimated to be about 125 to 150 feet away from the spot in which the collision took place; that he had noticed the young girl on her bicycle, about to cross the main highway, when the auto truck came along and hit her bicycle, and knocked her and it under the front left wheel of the truck.   The part of the truck which struck the child, according to his testimony, was the right-hand side of the machine, "the front wheel on the right-hand side of the machine," and that the blow swung the child's bicycle around.   When he first noticed her, immediately before the accident, she was a few feet in front of the auto, "probably two or three."   The auto was going south, and the girl was going easterly.   The witness Corwin, who was at the same place with Robinson, testified that they were located about 300 feet away from the point of the accident, and that his attention was attracted by hearing a scream, and, looking in the direc-

tion from which the sound came, he saw the child on the main highway near the center of the road, close to the on-coming motor truck, and that he noticed that she turned her bicycle to the south and went along for about five feet in front of the truck, then the front, righthand wheel of the truck struck the rear wheel of her bicycle and threw her down and passed over her. The negligence claimed on the part of the defendant was that the auto truck was running at a high rate of speed and gave no warning of its approach, and that, had its driver been exercising proper care, he should have noticed the presence of the child on the main highway and so operated his machine as to have avoided injury to her, under the circumstances.

The driver of the defendant testified that at the time of the accident his machine was going at the rate of from four to five miles an hour; that he had slowed down as he approached the crossroad, the existence of which was known to him, because he was about to stop at a store about a block further on, and that his machine had three speeds, but it had been geared to the third or high speed at the time of the accident; that, had he seen the child, it was so equipped that it could have been brought to stop within a few seconds, but that he did not see the child at all, and was not aware of any accident until he heard a sound as if a chain had snapped, and he then swerved to the side and brought his truck to a stop in about 40 or 50 feet, and he then saw the child lying on the road. There is no controversy in the case that the auto truck passed over the child, thus injuring her fatally. The case was submitted to the jury by the trial court on a theory stated in the charge as follows:

"No liability can be predicated in this case upon neglect to give any warning by the sounding of a horn when this auto truck came on the highway. Of course, if there was nothing there that was apparent, it would make no difference, and if it was daylight, and the auto truck could be seen coming, it is unnecessary to give an alarm if you can see the object coming on; you know there is danger if you continue in its path. The plaintiff, to recover in this case, must recover upon the theory that at the time this accident occurred the negligence of the defendant was in the operation and management of this machine at that time when the conditions became apparent, if at all, to the driver. People who are using a highway, either with vehicles or as pedestrians—vehicles in this case, the girl upon her bicycle and this motor vehicle of the defendant—have equal rights. They must so conduct themselves, the law says, as not to commit unnecessary injury to another; and if they see a certain condition in front of them, and they know that that condition is likely to do harm to the other person, they must stop. That is common sense, gentlemen."

The plaintiff offered considerable evidence to show that the spot at which the accident took place was visible from the on-coming motor truck for a considerable distance, but that, to one emerging from the intersecting road, vehicles approaching from the south on the main road, as was this motor truck, were not visible for any considerable distance. There is no proof in the case showing whether the child had glanced in a southerly direction before she went onto the main highway. From the testimony of Corwin there is a probable inference that the child did not discover the on-coming motor truck until she was about to go, either immediately in front of it, or to strike its

·side at the front, and that the swerving of the bicycle in a southerly direction was caused by her just as she screamed, and in order to .avoid a collision.   There was evidence on the part of some of the plaintiff's witnesses that as the motor truck passed along the highway it made a noise loud enough to be heard within some of the adjoining houses.   The evidence of the defendant's driver, and of the two men who sat on the front seat of the truck with him, was to the effect that they were looking straight ahead and never saw the child at all.   This is explainable, according to the testimony of several witnesses called by the defendant, by the claimed fact that after the child left the post ·office she continued for a short distance on a dirt sidewalk in front of .a store, and that she left the sidewalk to cross the main highway prac- ·tically just as the motor truck had come to that spot.   There is some ·testimony by the postmistress, who was called by the defendant, to the effect that the child had her head turned, looking behind her, as ·she came to the main road.   This testimony was met by that of wit- nesses called by the plaintiff, who contradicted the story told by the ·postmistress.   The jury must have found the defendant negligent on ·the theory that, if the driver had been looking ahead, he could have seen the child in time to avoid the collision, and that it was negligence ·on his part not to have seen the child under the circumstances, and :to have taken measures accordingly.

[1] Assuming that negligence may be imputable to the defendant under these circumstances, there is a grave difficulty in the case on the ·question of the absence of proof to show freedom of contributory neg- ïligence on the part of the decedent.   Was it her duty, when she came ·on the main highway, to glance right and left, as well as straight ahead, ïn order to see whether any vehicles were on-coming?   As to these ·circumstances, the case is barren of any proof at all.   Can this case be distinguished from the rule recently applied in Peterson v. Ballan- tine & Sons, 205 N. Y. 29, 98 N. E. 202, 39 L. R. A. (N. S.) 1147? There a man crossing a public street in the city, at a regular crossing, was run down by a truck drawn by a pair of horses.   The evidence shows that beyond controversy the driver of the truck was negligent, .and that, instead of looking ahead, he was looking behind, over his shoulder, in the direction of where an organ grinder was playing. The injured man, however, was not shown to have looked in the di- rection in which the truck was coming, or to have in any way done .anything to avoid a collision.   The Court of Appeals reversed the judgment in favor of the.administratrix of the injured man in that ·case, on the ground that, while the defendant was negligent in the happening of the accident, yet that there was no proof that the dece- dent was free from negligence which contributed to it.   Speaking of the rule as applicable to the facts of that case, the court said, by ·Gray, J., as follows:

"He had.the right to cross the street between its regular crossings, but he was bound, when doing so, to be reasonably careful; and the plaintiff was not entitled to charge the defendant with liability for the accident, how- ever negligent its servants, unless he could adduce evidence which proved, ·or tended to prove, that the deceased was free from fault at the time.   The difficulty with the case is in the plaintiff's failure in that respect.   Less

evidence may be required to show freedom from fault, where the injured party is dead; but, nevertheless, there must be some facts which, reasonably considered, permit of such an inference. The relaxation of the rule is not, as to the burden of proof, on the plaintiff in such an event; it is as to the quantum of proof, and greater latitude is allowed in permitting the inference of an exercise of care. Baxter v. Auburn & Syr. Elec. R. R. Co., 190 N. Y. 439 [83 N. E. 469]. It was as essential to plaintiff's case to establish that by some evidence, as it was to show the negligence for which the defendant was responsible; for where both parties concur in acts causing the injury the blame cannot be placed exclusively upon the defendant. And where the evidence is as consistent with a neglect of duty or care on the part of the injured party as it is with their exercise, upon what principle shall a jury be allowed to speculate upon the probabilities?"

[2, 3] In this case the appellant complains likewise of an error in the charge of the trial court, which arises from a colloquy as follows:

"Plaintiff's Counsel: I ask your honor to charge the jury that if this automobile came upon the girl under circumstances calculated to produce fright or terror, and such fright caused an error of judgment by which the automobile struck her, she is not guilty of contributory negligence.

"The Court: If she was so frightened, and the jury say so, and it was sudden fright, she is not expected to exercise that same degree of care that you would be in a calm moment. I will charge as you ask me.

"Defendant's Counsel: I except to it as not applicable to this case.

"The Court: I leave it for the jury to say; if there was no fright or sudden fright, then it does not apply."

The charge of the trial court, in this particular, was erroneous. If the child, in the exercise of due care, had found herself in a position of danger caused by the negligence of the defendant, and became frightened suddenly, then, of course, she was not chargeable with the exercise of what, in a moment of calmness, would be ordinary care, and she should not be chargeable with blame in turning the bicycle to the south and running in front of the on-coming motor truck, in order to avoid it; but such rule applies only to a case where the person injured was put in a position of danger through the negligence of the defendant, and without any negligence on his or her part, and the court should have so stated.

It is contended, however, by the respondent, that the trial court so qualified its charge on this point as to remove any reasonable objection to it by saying:

"I leave it to the jury to say; if there was no fright or sudden fright, then it does not apply."

This qualification was not sufficient. The child might well have been frightened when she found herself in a position of sudden danger, and yet the peril in which she found herself might have been due to her own contributory negligence, in which case the theory of "a sudden peril" could not be availed of in her behalf.

Judgment and order reversed and a new trial granted, costs to abide the event. All concur, except HIRSCHBERG, J., dissenting.